2003 WY 35

**Angela Nicole HUGHES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–9.

Supreme Court of Wyoming.

March 12, 2003.

Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender, Representing Appellant. Argument by Ms. Yoder.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General, Representing Appellee. Argument by Mr. Elrod.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellant, Angela Hughes (Hughes), was convicted of one count of possession with the intent to deliver a controlled substance, marihuana. Hughes appeals this conviction asserting in large part that evidence derived from a search of her residence should have been suppressed and that she was not timely and properly advised of her Miranda rights. Finding that the search of Hughes' residence was proper and that Hughes presents her Miranda argument for the first time on appeal, we affirm.

## ISSUES

[¶ 2] Hughes states the issues on appeal as follows:

I. Was the warrantless search of Appellant's home illegal and the evidence derived from it suppressible?

II. Was Appellant timely and properly warned under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)?

III. Did the trial court err in reserving to itself the factual determination of whether the alleged offense had been committed within a 'school zone'?

IV. Does loading a pipe with marihuana, while sitting quietly in your own home, constitute 'delivery' of a controlled substance within the meaning of W.S. § 35–7–1036(b)(i)(A)?

Although phrased in a slightly different manner, the State essentially offers the same four issues for our consideration.

## FACTS

[¶ 3] On April 16, 2001, Campbell County sheriff deputies beginning the midnight shift were asked to look for a male juvenile runaway. The deputies were informed the runaway was probably with George McLaughlin and given the runaway's possible location. Upon their arrival there, they observed a male exiting a home. When the male noticed the deputies, he turned around and attempted to go back inside. The deputies stopped the male and asked his name to determine if he was the runaway. The male stated that he was Christopher Good (Good) and produced identification confirming that fact. The deputies informed Good of their purpose in coming to the home and asked if he lived there. Good informed the deputies that he did not and told them that Hughes and her roommate were the occupants. The deputies observed that Good smelled of burnt mari-

huana, his eyes were watery and bloodshot, and his movements were somewhat slow. They then requested to speak to Hughes regarding the runaway.

[¶ 4] Good climbed the steps to the home and, without knocking or otherwise announcing his presence, opened the door. As Good opened the door, the deputies detected marihuana smoke. Deputy Ash (Ash) peered through the open door and noticed a marihuana pipe, scales, and loose-leaf marihuana on the coffee table. Ash then entered the home behind Good without knocking or otherwise obtaining permission. Deputies Theis and Sharpe followed Ash into the home.

[¶ 5] Once inside, the deputies saw Hughes sitting at her kitchen table placing marihuana into a pipe. In addition to Good and Hughes, two other males were in the home. These two were later identified as Bryan Boardman and Chad Swanson. Ash initiated a conversation with Hughes about the runaway as she continued to load her pipe. Hughes indicated that the runaway was not there and that George McLaughlin had moved out of the home a few months prior. Ash then asked Hughes to take him through the home to confirm that the runaway was not present, which she did. At the conclusion of this tour, Ash pointed out that it was obvious that the group had been smoking marihuana. Ash then asked Hughes who else had been doing so. Hughes confirmed that she had been smoking marihuana and also named Good and Swanson. Hughes stated that Boardman had not been smoking with the group.

[¶ 6] Shortly thereafter the deputies arrested Swanson, Good, and Hughes. Hughes asked to go to her room and, once there, volunteered the location of another stash of marihuana. The deputies escorted Hughes to the squad car where she was read her Miranda rights. After Hughes was transported to jail for booking, a search warrant was obtained for her home. The search revealed an additional five individual quarter-ounce bags of marihuana and $268 in cash.

[¶ 7] At the detention center, Hughes met with Investigator Stephen Bagwell (Bagwell). Bagwell reminded Hughes of her right to remain silent and her right to have an attorney present, but Hughes responded that she would like to talk with him. In the course of this conversation, Hughes explained that she had paid $100 for five quarter-ounce bags of marihuana. She also stated that she had loaded her marihuana pipe and was passing it to Good and Swanson.

[¶ 8] Hughes was charged with possession with the intent to deliver committed in violation of Wyo. Stat. Ann. § 35–7–1036(b)(i)(A). Hughes made a motion to suppress all evidence gathered as a result of the search. The district court denied the motion, finding that exigent circumstances permitted the officer's entry into Hughes' home.

[¶ 9] Following a two-day trial, a jury convicted Hughes of possession of a controlled substance with the intent to deliver. In a separate sentencing proceeding, the district court found the State had proved beyond a reasonable doubt that the crime took place within 500 feet of a school. Hughes was sentenced to a term of imprisonment not less than two years and not more than four years. This appeal followed.

### STANDARD OF REVIEW

[¶ 10] When reviewing a trial court's ruling on a motion to suppress, we apply the following standard:

> We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review *de novo. Id.; Jones v. State*, 902 P.2d 686, 690 (Wyo.1995).

*Martindale v. State,* 2001 WY 52, ¶ 9, 24 P.3d 1138, ¶ 9 (Wyo.2001) (quoting *Putnam v. State,* 995 P.2d 632, 635 (Wyo.2000)).

## DISCUSSION

### Warrantless Search

[¶ 11] Hughes challenges the initial search of her home claiming that no justification existed for the warrantless search. She asserts the district court erred by denying her motion to suppress evidence found during this search. Both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution provide citizens with protection from unreasonable searches and seizures. However, "[n]either the federal nor the state constitution forbids *all* searches and seizures; rather, they prohibit *unreasonable* searches and seizures." *Lancaster v. State,* 2002 WY 45, ¶ 61, 43 P.3d 80, ¶ 61 (Wyo.2002) (citing *Guerra v. State,* 897 P.2d 447, 452 (Wyo.1995)). We have stated that under both constitutions, warrantless searches and seizures are per se unreasonable, with a few specifically established exceptions. *Morris v. State,* 908 P.2d 931, 935 (Wyo.1995). These specific exceptions include:

1) search of an arrested suspect and the area within his control; 2) a search conducted while in hot pursuit of a fleeing suspect; 3) a search and/or seizure to prevent the imminent destruction of evidence; 4) a search and/or seizure of an automobile upon probable cause; 5) a search which results when an object is inadvertently in the plain view of police officers while they are where they have a right to be; 6) a search and/or seizure conducted pursuant to consent; and 7) a search which results from an entry into a dwelling in order to prevent loss of life or property.

*Andrews v. State,* 2002 WY 28, ¶ 18, 40 P.3d 708, ¶ 18 (Wyo.2002) (quoting *Dickeson v. State,* 843 P.2d 606, 610 (Wyo.1992)).

[¶ 12] In the instant case, the district court found exigent circumstances existed permitting the deputies to enter Hughes' home without a warrant. The record indicates that: 1) the deputies were at the home on official business looking for a runaway; 2) the deputies encountered Good, had a discussion with him, and asked to speak with the owner of the home; 3) the deputies noticed that Good smelled of marihuana, had bloodshot watery eyes, and his movements were somewhat slow; 4) Good reentered without knocking or asking permission to enter; 5) when Good opened the door, Ash saw a marihuana pipe, smoke from burnt marihuana, a green leafy substance, and scales; and 6) Ash made these observations from the front steps of the residence, in plain view without entering the residence.

[¶ 13] "The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety. If such facts reflect the danger or destruction of valuable evidence, exigent circumstances are present." *Jones v. State,* 902 P.2d 686, 691 (Wyo.1995) (quoting *Patterson v. State,* 691 P.2d 253, 258 (Wyo.1984)). A marihuana pipe, smoke from burnt marihuana, a green leafy substance, and scales were observed in the house. Good had knowledge of the deputies' arrival. Good was returning to the home and could have informed the occupants of the deputies' arrival. The evidence could have been easily removed or destroyed once Good reentered the house and before the officers would have had an opportunity to obtain a search warrant. A distinct danger of destruction of this evidence existed. *See Patterson v. State,* 691 P.2d 253, 258 (Wyo. 1984).

[¶ 14] The deputies testified as to the facts surrounding their entry into the home. Based on their reasons and the evidence presented, the district court concluded that exigent circumstances existed for the warrantless entry. We agree with this decision. The deputies could have reasonably concluded that Good would, if given the chance, inform the other occupants of their presence, allowing the occupants to quickly dispose of the evidence. Therefore, we find that the initial entry into Hughes' home was legitimate.

[¶ 15] After the deputies were inside the house, the occupants' drug activity came within the deputies' plain view. The deputies were authorized to observe Hughes loading a marihuana pipe and see other drug para-

phernalia. Both parties' briefs discuss the issue of "plain view" at length. Perhaps the discussion was due to the portion of the district court's decision letter stating: "Therefore, there is no reason for the court to suppress the evidence since plain view plus exigent circumstances permitted the officers entry into the residence." In *McDermott v. State*, 870 P.2d 339, 343–44 (Wyo. 1994),[1] we said:

> When an officer lawfully occupies that vantage point from which he can observe possible evidence in plain view, there is no search, reasonable or unreasonable, proscribed by these constitutional inhibitions. In such an instance, the constitutional protections are not infringed because there is no expectation of privacy with respect to those things left where they can be seen by anyone, or everyone. In *Horton* [*v. California* ], 496 U.S. 128, at 133–34, 110 S.Ct. [2301] at 2306 [110 L.Ed.2d 112 (1990)], the Supreme Court of the United States articulated the basic rationale:
>
> > The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. The "plain-view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest. If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that

are implicated by seizures rather than by searches.

(Citations omitted.) Ash's view of the evidence from the front steps would, therefore, not be a search and neither would the plain view of evidence seen after the initial entry into the house. The plain view of the drug paraphernalia combined with the fact that Good was returning to the house, that he could have informed the occupants of the deputies arrival, and that the occupants could have destroyed the evidence, allowed for justifiable entry into the home.

[¶ 16] Hughes would have us believe that the unreasonableness of the search can be shown by the fact that after the deputies had already entered the house and been there for some time, they then obtained a search warrant. We do not believe this to be the case. The deputies entered the home to stop the destruction of evidence and then obtained a search warrant in order to search the rest of the home. The deputies merely placed themselves in the position to maintain the status quo until a warrant could be obtained. The deputies did not search what was beyond plain view until they had a warrant. After the warrant was obtained, they then searched the rest of the home finding more marihuana.

[¶ 17] As with all searches, reasonableness is the ultimate standard. We do not believe the deputies' conduct in this instance to be unreasonable. Exigent circumstances allowed their warrantless entry into the home. Once there, plain view allowed them to observe the evidence present in the home. As such, there was no error in the district court's denial of the motion to suppress.

### Alleged Miranda Violation

■■■■■ [¶ 18] Hughes claims that she was not timely and properly advised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

---

1. In Wyoming the formulation of the plain view doctrine contains three requisites for the lawful seizure of property. A former fourth factor, requiring exigent circumstances, has been abandoned. *Hixson v. State,* 2001 WY 99, ¶ 13 and n. 8, 33 P.3d 154, ¶ 13 and n. 8 (Wyo.2001). In Hixson we explained, "For an analysis of the underpinnings of the plain view doctrine, including the different rights implicated by a search, as opposed to a seizure, *see McDermott v. State,* 870 P.2d 339, 343–45 (Wyo.1994). Only the exigent circumstances requirement of *McDermott* has been overruled." *Id.,* n. 8.

She asserts that this violation resulted in admissions of both verbal and demonstrative evidence that were the result of an unwarned custodial interrogation. Hughes raises this issue for the first time on appeal. A criminal defendant may not raise an issue for the first time on appeal. *Meerscheidt v. State*, 931 P.2d 220, 225 (Wyo.1997) (citing *Kennedy v. State*, 890 P.2d 37, 38 (Wyo.1995)).

[¶ 19] Hughes made no mention of a *Miranda* violation or a custodial interrogation in her motion to suppress or the memorandum of law accompanying that motion. Our review of the motion hearing reveals no argument on these topics either. However, at the motion to suppress hearing the following exchange took place:

> [The State]: I guess I have a point of clarification. We might end here if Defense Counsel would tell me on the record, tell me their scope. I read the motion filed. It stresses all evidence gathered or derived as a result of the search of the residence. There is an interview done by Detective Bagwell at sheriff's office after she's in custody. If they're contesting that and asking it to be suppressed so that there's a burden, we will go ahead. If they're not and their central focus is the entry and that's it, we don't need to go ahead on that. And I just for brevity sake, if they're just worried about the entrance and the things leading up to the actual search warrant, but I can't tell from because the word derived in here—but I have that witness available and I guess I'm asking on the record what they're after.
>
> . . .
>
> [Defense Counsel]: Regarding the statement, we're not challenging the voluntariness of the statement. I don't think the State has any burden in that regard. We were asserting that the State will be (inaudible) of the illegal search, but regarding any proof on the voluntariness or the Miranda warnings, we don't have any problems with that.

These statements caused the State to forgo the opportunity to develop the evidence necessary to show the facts and circumstances surrounding the statements she now com-plains were involuntary. We, therefore, decline to address this issue further.

### Determination of Location of the Offense

[¶ 20] Hughes asserts that it was error for the district court to decide the issue of whether her offense took place within 500 feet of a school zone. Our review of the record reveals that Hughes filed a pretrial motion to bifurcate the jury trial on the issues of guilt for the underlying offense and the location of the offense. Hughes further filed a motion in limine to exclude all evidence that her offense took place within 500 feet of a school. Hughes argued that the location of her offense was prejudicial and it would encourage the jury to convict her due to the location of her crime near a school. In making her arguments, Hughes said: "I believe that that issue can be decided by the judge."

[¶ 21] Partially granting Hughes' request, the district court prohibited the State from making the location of Hughes' crime an important issue at trial and, further, decided that the court would determine the location of the offense following a jury verdict as to guilt. Following the jury verdict, the district court found beyond a reasonable doubt that Hughes' crime did in fact take place within 500 feet of a school zone. At this hearing, Hughes for the first time objected to the district court deciding the location of her crime.

[¶ 22] The principle of invited error governs this issue. Simply stated, this principle stands for the proposition that if a party requests or moves the court to make a ruling which is actually erroneous, and the court does so, that party cannot take advantage of that error on appeal. *Blumhagen v. State*, 11 P.3d 889, 895 (Wyo.2000) (citing Black's Law Dictionary 487 (5th ed.1979); *Schott v. State*, 864 P.2d 38, 39 (Wyo.1993)). In other words, a party does not get to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit. *Id.* Arguably, had Hughes not advocated for the district court to decide the issue of the location of her crime, the court would have allowed the jury to decide the issue. We will not allow Hughes to now

benefit from any potential error created by the district court's decision, which came at her insistence.

### Sufficiency of the Evidence

[¶ 23] Although not stated as such, we consider Hughes' last claim to be a sufficiency of the evidence claim. In reviewing this claim, we utilize our usual standard:

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996). We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. *Id.* (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)).

*Williams v. State*, 986 P.2d 855, 857 (Wyo. 1999).

[¶ 24] Hughes argues that the State provided no evidence of her actual delivery of marihuana. She states: "While these assertions, if admissible, might make out a case of possession, they do not make a case of 'delivery.' Law enforcement did not observe the completed act of delivery." However, Hughes was tried and convicted of *possession with the intent to deliver marihuana.* Hughes was not charged or convicted of *delivery.* Thus, the State had no duty to prove delivery, they only had to prove the elements applicable to possession with the intent to deliver.

[¶ 25] In this instance, the State is required to prove that 1) Hughes possessed, 2) with the intent to deliver, 3) marihuana, a controlled substance. *Urrutia v. State,* 924 P.2d 965, 967 (Wyo.1996). Hughes conceded at trial that she knowingly possessed marihuana, so the only element at issue is intent to deliver. "The intent-to-deliver element may be proven by a showing that a completed delivery occurred or that the defendant held the specific intent to deliver the controlled substance." *Urrutia,* 968 (citing *Dorador v. State,* 573 P.2d 839, 843 (Wyo.1978); *Stuebgen v. State,* 548 P.2d 870, 879 (Wyo. 1976)).

[¶ 26] Hughes admitted to Detective Bagwell that she lit her marihuana pipe and was passing it to Good and Swanson when the deputies arrived in her trailer. Such admittance shows her specific intent to deliver marihuana. Beyond that, the jury also heard that the marihuana was packaged as it normally would be for sale, and the amount was indicative of distribution. When viewing this evidence in the light most favorable to the State, we find sufficient evidence to convict Hughes of possession with the intent to deliver marihuana.

### CONCLUSION

[¶ 27] As indicated above, we find no error in the proceedings. We, therefore, affirm the judgment and sentence of the district court.