897 A.2d 242

Christopher GORMAN

v.

STATE of Maryland.

No. 1282 Sept. Term, 2004.

Court of Special Appeals of Maryland.

April 26, 2006.

414

Brian M. Saccenti (Nancy S. Forster, Public Defender, on the brief), Baltimore, for Appellant.

Edward J. Kelley (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: SALMON, ADKINS and SHARER, JJ.

ADKINS, Judge.

Christopher Gorman was arrested and charged with numerous narcotic and firearm possession offenses. Before trial, he moved to suppress the physical evidence seized in his apartment, claiming that it was obtained pursuant to a warrantless entry that violated the Fourth Amendment. The Circuit Court for Baltimore City denied his motion on the grounds that the warrantless entry was justified by exigent circumstances. A jury convicted Gorman of four firearm possession charges, and he was sentenced to ten years in prison.

In this appeal, Gorman contends that the suppression court erred when it denied his motion to suppress. He claims that there were no exigent circumstances, and that even if there were, warrantless entries to arrest for marijuana possession are presumptively unreasonable because that crime is a "minor offense." We disagree, and will affirm the judgment because we conclude that the warrantless entry was reasonable under the circumstances.

## FACTS AND LEGAL PROCEEDINGS

On July 9, 2002, at about 10:00 p.m., Sergeant Steven Nalewajkl, a twenty-one year veteran with the Baltimore City Police Department, was called to investigate a shooting in the Brooklyn neighborhood of Baltimore City.[1] Upon arrival at the scene, Sgt. Nalewajkl observed that Christopher Gorman had suffered a gunshot wound. He also encountered Gorman's girlfriend, Leslie Nicole Harmon, who was pregnant and not wearing any shoes. Because he wished to question Harmon about the shooting, Sgt. Nalewajkl, accompanied by Detective Clarence Grear, escorted the woman in an unmarked police cruiser to her apartment to retrieve her shoes. Harmon shared this apartment, located about five blocks from the

---

1. Because this appeal involves the denial of a motion to suppress, our review of the facts is confined to the record of the suppression hearing. *See Faulkner v. State*, 156 Md.App. 615, 640, 847 A.2d 1216, *cert. denied*, 382 Md. 685, 856 A.2d 721 (2004).

scene of the shooting, at 932 East Patapsco Avenue, with Gorman and his brother, Curtis Painter.

When they arrived at the apartment house, Sgt. Nalewajkl accompanied Harmon to the second floor apartment, explaining that he did so because "possible witnesses to shootings disappear on you." Harmon attempted to open the door to the apartment, but it was locked. She "jingled the handle," and then knocked on the door. From inside the apartment, a man asked her to identify herself, and after a "minute or two," Painter answered the door. Painter appeared to Sgt. Nalewajkl to be very nervous:

STATE: Okay. When the door was opened, did you notice anything unusual?

NALEWAJKL: I noticed his mannerisms. He was extremely nervous, appeared to be breathing hard, and just very nervous in general.

STATE: When you first had your observations of him, were you still outside the door—meaning not inside the apartment yet?

NALEWAJKL: Yes.

Sgt. Nalewajkl also "smelled the odor of burnt marijuana emanating from the apartment."[2] His observation of Painter and the smell of marijuana caused his "intent" to change while at the apartment door:

STATE: So your only reason for going into the apartment was for the shoes?

NALEWAJKL: My only intent to go up to the apartment was to get her shoes.

STATE: Did that change?

NALEWAJKL: Yes.

STATE: What did it change to?

NALEWAJKL: Well, when I went up to the apartment and [Painter] didn't immediately open the door, that arose [sic]

---

2. Nalewajkl testified on cross-examination that, in his written report of these events, he indicated that he smelled a "stale" odor of marijuana.

my suspicion, and, then, when he opened the door, I could smell the odor of burnt marijuana, and he was extremely nervous.

And when I asked him what he was so nervous about, he said he had two bags of weed.

Nalewajkl then entered the apartment and placed Painter under arrest:

NALEWAJKL: At that point, he was under arrest, when I could smell the burnt marijuana. He said he had two bags of weed. He was under arrest at that time.

STATE: And, at this point, were you inside the apartment?

NALEWAJKL: Yes.

Nalewajkl clarified the sequence of events:

[S]he just knocked on the door, and I stepped into the apartment with her and immediately smelled the odor of burnt marijuana on the inside. I'm inside—I'm **right at the doorway where they opened the door, and he opens the door, I could smell the burnt marijuana.** I could see him extremely nervous.

. . .

So, then, I asked him why he was nervous. He said he had two bags of weed, so instantaneously he was under arrest.

Harmon testified that she walked into the apartment and immediately entered her bedroom, which was three feet to the right of the doorway. She never told Nalewajkl to enter the apartment, but could hear him questioning Painter while she was in the bedroom. She first noticed that Nalewajkl had come inside when she emerged from the bedroom with her shoes. Painter similarly testified that Nalewajkl simply followed Harmon into the apartment and began questioning him, and that neither he, nor Harmon, ever invited Nalewajkl in.

Upon entering the apartment, Sgt. Nalewajkl placed Painter under arrest. He called Detective Grear, who was still sitting in the cruiser, to come place handcuffs on Painter. He then "secured the apartment for any persons that might be in the

apartment" because he "was going to get a search warrant." When asked what he meant by "secure the apartment," Nalewajkl explained:

NALEWAJKL: It's to check the apartment for any other persons in the apartment—

STATE: And why do you do that?

NALEWAJKL:—and I would bring them out to the living room for officer's safety reasons and—

. . .

**And the fact that if you don't secure the apartment, evidence could be destroyed.**

As the sergeant went through the apartment, he noticed a chair in an open closet. The back of the chair was facing outwards. Because it was "unusual to have a chair in the closet," and because he "believed [a] person may have been standing on the chair to secret himself in the closet," Sgt. Nalewajkl went to investigate. He observed that inside the closet "there was an attic that was open and there was the butt of a handgun on the ledge of the closet." He then "secured the rest of the house."

A search warrant was obtained, pursuant to which police seized cocaine, various firearms, walkie-talkie radios, digital scales, and assorted drug paraphernalia. As a result of the seizure of these goods, most of which were found in the closet, Gorman was named in two separate indictments, totaling 26 counts for various narcotic and firearm possession offenses.

Gorman moved to suppress the weapons, drugs, and other items that were seized in his apartment, arguing that because Nalewajkl never had legal authority to enter the apartment in the first place, their discovery was the fruit of the poisonous tree. The circuit court conducted a hearing on the motion, at which defense counsel indicated that the "only focus of this hearing is going to be whether or not [the police] had the initial right to go into the apartment."

The court denied Gorman's motion. It reasoned that the entry into the apartment was justified by exigent circumstances, explaining:

Having reviewed the authorities and considered all of the arguments and the evidence in particular, ... it is my belief that under the Maryland law that exists at this time, **when the officer was at the door and testified that he smelled the odor of burning marijuana and had someone before him who appeared as though he may have been smoking marijuana, that he had, at that point, probable cause, and that the fact that it was a substance that could be so easily disposed of, that, in addition to the probable cause, there was exigency** which allowed him to both make an arrest and then do a brief search of the immediate area for officer's safety and for contraband, and that led to him looking into the closet and seeing the butt of the weapon, which later led to the State's using that as probable cause to obtain a search and seizure warrant which was later executed.

So, on the basis of that, the Court is going to deny the motion.

The two cases against Gorman were tried together. Gorman was convicted of four counts of possessing regulated firearms after having been convicted of a prior felony that disqualified him from possession of firearms. *See* former Md.Code, Art. 27 § 445(d)(1)(ii) (recodified as Md.Code, Pub. Safety § 5–133(b) (2003)). He was sentenced to ten years in prison.

Gorman's sole question on appeal is whether the suppression court erred in denying his motion to suppress on grounds that there were exigent circumstances. He argues that the court erred because (1) the State did not meet its burden of showing that Sgt. Nalewajkl's entry was to protect against the destruction of evidence, and (2) a warrantless entry can never be justified by exigent circumstances where the underlying offense is marijuana possession, because that crime is a "minor offense." For the reasons explained in detail below, we

conclude that the suppression court properly denied the motion.

## DISCUSSION

### Standard Of Review

▮ Our review of the circuit court's denial of a motion to suppress evidence is confined to the record of the suppression hearing. *See Faulkner v. State,* 156 Md.App. 615, 640, 847 A.2d 1216, *cert. denied,* 382 Md. 685, 856 A.2d 721 (2004). We "consider the evidence in the light most favorable to the prevailing party," here, the State. *Id.* We also "accept the suppression court's first-level factual findings unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses." *Id.* We exercise plenary review of the suppression court's conclusions of law, and "make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case." *Id.*

### The Fourth Amendment And Exigent Circumstances

▮ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[3] U.S. Const. amend. IV. The central requirement of this Amendment is that searches and seizures be "reasonable." *See City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447, 451, 148 L.Ed.2d 333 (2000). Unless there is consent to enter, "searches and seizures inside a home without a warrant are presumptively unreasonable."[4] *Payton v. N.Y.,* 445 U.S. 573,

---

3. "The protections of the Fourth Amendment are applicable to the States by virtue of the Fourteenth Amendment, and its provisions are construed *in pari materia* with those of Article 26 of the Maryland Declaration of Rights. Constructions of the federal amendment by the United States Supreme Court are controlling authority." *Muse v. State,* 146 Md.App. 395, 402 n. 7, 807 A.2d 113 (2002) (citations omitted).

4. The State argues that we can decide this appeal in its favor because Harmon gave Sgt. Nalewajkl implied consent to enter the apartment.

586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. at 1382.

 The exception to the warrant requirement for exigent circumstances is narrow, and "[a] heavy burden falls on the government to demonstrate exigent circumstances that overcome the presumptive unreasonableness of warrantless home entries." *Williams v. State,* 372 Md. 386, 403, 813 A.2d 231 (2002). "Exigent circumstances exist when a substantial risk of harm to the law enforcement officials involved, to the law enforcement process itself, or to others would arise if the police were to delay until a warrant could be issued." *Id.* at 402, 813 A.2d 231. Exigent circumstances include "an emergency that requires immediate response; hot pursuit of a fleeing felon; and imminent destruction or removal of evidence." *Bellamy v. State,* 111 Md.App. 529, 534, 682 A.2d 1185, *cert. denied,* 344 Md. 116, 685 A.2d 451 (1996). Certain factors must be considered in the determination of whether exigent circumstances are present: "the gravity of the underlying offense, the risk of danger to police and the community, the ready destructibility of the evidence, and the reasonable belief that contraband is about to be removed." *Williams,* 372 Md. at 403, 813 A.2d 231. Also "[r]elevant to the determination ... is the opportunity of the police to have obtained a warrant." *Dunnuck v. State,* 367 Md. 198, 205–06, 786 A.2d 695 (2001).

 When the State argues that a warrantless search was justified by the potential for the destruction of evidence, "the government must show that the police, at the time of the entry, had a reasonable basis for concluding the destruction of evidence was imminent." *Williams,* 372 Md. at 403–04, 813 A.2d 231. The State must demonstrate that the circumstances

Because, however, the suppression court made no finding regarding consent, and ruled only that the search was justified by exigent circumstances, we decline to address consent.

"present[ed] a specific threat to known evidence." *Id.* at 404, 813 A.2d 231 (citations omitted). The need to enter "must be immediate and compelling and not justified by an inference about a future possibility." *Id.* (quotations and citations omitted). It also "cannot be created or precipitated by police actions or conduct designed to have that result." *Dunnuck,* 367 Md. at 206, 786 A.2d 695. The determination of exigency is made on a case-by-case basis, considering "the facts as they appeared to the officers at the time of the entry." *Williams,* 372 Md. at 403, 813 A.2d 231.

With these principles in mind, we evaluate Gorman's contentions.

## I.

### Destruction Of Evidence

Gorman argues that the State failed to meet its "heavy burden ... to demonstrate exigent circumstances," *Williams,* 372 Md. at 403, 813 A.2d 231, justifying Sgt. Nalewajkl's warrantless entry into his apartment.[5] He contends that "[t]he record is devoid of any indication that Sgt. Nalewajkl's purpose in initially entering the apartment was to prevent the destruction of evidence[.]" "At best," he claims, Nalewajkl's "testimony established that destruction of evidence was a possibility." He maintains that "[t]his kind of generalized, speculative offering is clearly insufficient," and that, although the smell of marijuana might be enough to support the inference that Painter was *smoking* marijuana, it was not enough to conclude that he was *destroying* it.

---

**5.** Although it was the protective sweep of the apartment that led to Sgt. Nalewajkl's discovery of the firearms Gorman was convicted of possessing, our focus on appeal is Gorman's contention that Nalewajkl had no authority to **cross the threshold** of the apartment at all. Gorman does not dispute that, once he was lawfully in the apartment, Nalewajkl could perform a protective sweep of the apartment for his own safety. *See Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

Gorman further argues that even if Sgt. Nalewajkl, upon questioning Painter, developed a belief that Painter might destroy evidence remaining in the apartment, this belief would not "justify the entry because (a) it did not precede the entry, and (b) circumstances created or precipitated by police actions or conduct cannot justify a warrantless entry." *See Dunnuck,* 367 Md. at 206, 786 A.2d 695.

We are unable to find a Maryland case that presents a factual scenario comparable to Gorman's. In *Dunnuck v. State,* the circuit court refused to suppress marijuana obtained through a warrantless entry on the police's theory that its possible destruction constituted exigent circumstances. The Court of Appeals reversed. 367 Md. at 218, 786 A.2d 695. The Court found critical the officers' decision to sit outside the house for over an hour waiting for the defendant to return home, even though they had received an anonymous tip that there was marijuana in the house, and had personally spotted marijuana through a window while no one was home. *Id.* at 214–15, 786 A.2d 695. The Court reasoned that because no one was home, the homeowner "was not aware that the police had become aware of the contraband." *Id.* at 214, 786 A.2d 695. Thus, because the officers had ample time to obtain a search warrant before the need to enter the house arose, "the police **created** the exigency that they rel[ied] upon to justify the warrantless entry . . . and to excuse their failure to obtain a search warrant." *Id.* at 215, 786 A.2d 695 (emphasis added).

*Dunnuck* is readily distinguishable from Gorman's case. Sgt. Nalewajkl accompanied Harmon to the apartment only to ensure that she, a potential witness to an apparently unrelated shooting, would not wander off. The trip to the apartment was prompted by Harmon's need to pick up her shoes. Nalewajkl's apprehension of an exigency arose only **after** he perceived, from the threshold of the apartment through the open door, Painter's nervousness and the odor of marijuana.[6]

---

6. Although the exact timeline of the events that occurred at Gorman's doorstep is unclear, we consider the evidence in the light most favorable to the State, as the prevailing party; we also accept as correct the

Nalewajkl was also suspicious of Painter's delay in opening the door. The Sergeant therefore did not **create** the exigency by waiting (for over an hour) outside the apartment until the occupant returned home, as was the case in *Dunnuck.*

Cases from other jurisdictions are more comparable to this case because they involve scenarios in which the police did not create the exigency, and had no opportunity to obtain a search warrant ahead of time. In *U.S. v. Grissett,* 925 F.2d 776 (4th Cir.1991), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991), police officers went to a hotel room because a suspect in their custody told them that a person inside the room could identify him. When the person inside opened the door, the officers identified themselves. Smelling burning marijuana, they entered the room and seized marijuana and cocaine in plain view.

The Fourth Circuit determined that the warrantless entry was justified by the potential for destruction of the drugs, reasoning that

> [s]ince the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a warrant. This is especially true in the case of an easily disposable substance like drugs.

925 F.2d at 778. The court also explained that "the proper inquiry" in determining the existence of exigent circumstances "focuses on what an objective officer could reasonably believe;" there need not be "concrete proof that the occupants of the room were on the verge of destroying evidence[.]" *Id.*

In *Mendez v. Colorado,* 986 P.2d 275 (Colo.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000), an officer who was investigating trespassers inside a hotel smelled burning marijuana coming from one of the hotel rooms. He summoned another officer and the hotel manager,

suppression court's factual findings. *See Faulkner,* 156 Md.App. at 640, 847 A.2d 1216.

and, "[f]earing that the occupant of the room had heard the police activity in the hallway and would attempt to flush evidence of the drug use down the motel room toilet," the officer asked the manager to open the room. 986 P.2d at 278. When he stepped into the room, the officer observed the occupant run into the bathroom and flush the toilet. He seized marijuana located in plain view and other drugs found on the occupant's person.

The Supreme Court of Colorado concluded that the warrantless entry was justified because "there was a very real and substantial likelihood that contraband would continue to be destroyed before a warrant could be obtained to search the motel room." *Id.* at 282. The court also reasoned that "the exigencies arising in this case were not foreseeable and a warrant could not have readily been obtained," because the officer was present "on the premises to investigate an unrelated complaint when he inadvertently encountered the smell of burning marijuana." *Id.*

In *Cameron v. Alabama*, 861 So.2d 1145 (Ala.Crim.App. 2003), a police officer approached an apartment in a public housing project because the Housing Authority had notified the police that a vehicle was parked on its front lawn and needed to be moved. When someone opened the door, the officer could smell marijuana and see smoke in the apartment. The officer asked to speak to the tenant of the apartment, at which point the person who had opened the door ran into the kitchen. The officer then entered the apartment and observed the person remove objects from the kitchen table and place them in a drawer. A subsequent consent search resulted in the seizure of marijuana.

The Alabama Court determined that the warrantless entry was justified by exigent circumstances. The court first reasoned that the odor of marijuana gave the officer probable cause to believe that there was marijuana in the apartment. 861 So.2d at 1150. The court next considered that the person who opened the door ran from it and began to hide things. *Id.* at 1152. Finally, the court observed that the officer had

approached the apartment "for a legitimate and uncontrived reason." *Id.* The court concluded that "[t]aking all of this into consideration, [the] [o]fficer [ ] could have reasonably concluded from [the person's] suspicious actions that he would likely destroy or remove some portion of the marijuana." *Id.*

In *Hughes v. Wyoming,* 65 P.3d 378 (Wyo.2003), officers investigating a child runaway approached a residence at which they believed the runaway might be located. When they arrived at the doorway, a man exited the home, but when he noticed the officers, turned around as if to go back inside. The officers "observed that [the man] smelled of burnt marihuana, his eyes were watery and bloodshot, and his movements were somewhat slow." 65 P.3d at 380–81. The officers asked the man if they could talk to the occupant of the home about the runaway. When the man opened the door for the officers, they smelled marijuana and, through the open door, could see a marijuana pipe, scales, and loose marijuana on the coffee table. The officers entered the apartment behind the man. The people inside the house confirmed that they had been smoking marijuana, and a subsequent search pursuant to a warrant resulted in the seizure of marijuana.

The Supreme Court of Wyoming concluded that the warrantless entry into the home was supported by exigent circumstances. *Id.* at 382–83. The court reasoned that the officers could smell the odor of marijuana and see it through the open door of the home. *Id.* at 382. It also explained that the man at the door "had knowledge of the deputies' arrival," and therefore "[t]he deputies could have reasonably concluded that [the man] would, if given the chance, inform the other occupants of their presence, allowing the occupants to quickly dispose of the evidence." Id.

In *Cherry v. Virginia,* 44 Va.App. 347, 605 S.E.2d 297 (2004), an officer knocked on the door of a known "problem" house because a stolen car was parked in the driveway. The officer smelled marijuana when a woman opened the door. When the woman called inside that the police were at the door, the officer entered the house. Once inside, he saw

cocaine and paraphernalia on a table, and seized cocaine from one of the persons seated at the table.

The Virginia Court reasoned that the warrantless entry was justified by exigent circumstances. It factored into its decision the officer's purpose in going to the house, which was to "investigat[e] a non-drug-related offense." 605 S.E.2d at 304. Because the officer "heard significant movement" in the house "[i]mmediately following" the notification that the police were at the door, the court concluded that the officer "acted reasonably in concluding that both the drugs and any occupants in possession of them were likely to be gone by the time he could obtain a warrant." *Id.* at 305.

In *Rideout v. Wyoming*, 122 P.3d 201 (Wyo.2005), officers approached a residence for purpose of investigating the marijuana possession of a third party. They could smell the "very strong" odor of marijuana when a person opened the door, exited, and closed the door behind him. From the front porch, the officers could see an occupant of the house moving quickly from the dining room area in the front of the house toward the back. They entered the home in order to secure it to prevent the destruction of evidence while they obtained a warrant. When a warrant was obtained, the police seized "numerous items related to drug trafficking." 122 P.3d at 204.

The Wyoming Court, relying on its prior decision in *Hughes* and the Virginia Court's opinion in *Cherry*, concluded that the officers' warrantless entry was supported by exigent circumstances. The court explained that the officers did not have probable cause to believe that a crime was being committed until they smelled marijuana "emanating from inside the residence." *Id.* at 208. The court also found important that "the exigencies were not of the deputies' making," but rather, the officers "had a legitimate law enforcement purpose for their presence at the residence." *Id.* The court summarized:

> Given the furtive movements of the individual when the deputies approached the residence and their knowledge that at least one other person ... was inside, it was reasonable

for the deputies to fear destruction of evidence if they exited the premises and waited for a search warrant.

*Id.*

All six of these cases share two closely-related facts upon which the courts relied in determining that exigent circumstances were present. First, the officers in all six cases arrived at the residences for purposes unrelated to the occupants' marijuana possession; in other words, they were on the premises for "legitimate and uncontrived reasons." *Cameron,* 861 So.2d at 1152. None of the officers had probable cause to believe that the crime of marijuana possession was occurring within the residences until **after** their arrival. Thus, the officers did not create the exigency that justified their warrantless entries. Second, the residents in all of the cases had knowledge of the police presence and, presumably, detection of the odor of marijuana. Both of these facts are significant because they support the courts' conclusions that the police had no time to obtain a search warrant, a critical factor in the exigent circumstances analysis. *See Dunnuck,* 367 Md. at 205–06, 786 A.2d 695.

The same two facts are present in this case. Sgt. Nalewajkl was at Gorman's apartment for the "legitimate and uncontrived reason" of accompanying a potential shooting witness to retrieve her shoes. He had no reason to suspect that there was marijuana inside the apartment until he could smell it when a "nervous" and heavily-breathing Painter opened the door, after a delay.

Further, once Painter opened the door and observed that a police officer, who now had knowledge of his marijuana possession, was standing in front of him, Sgt. Nalewajkl had no time to obtain a search warrant. Even if he could detain Painter, Nalewajkl did not know whether there were additional people inside the apartment who could destroy any marijuana should he leave to obtain a warrant. Indeed, Harmon could remain inside the apartment to destroy the evidence, as Nalewajkl had no basis on which to detain her.

Gorman relies upon several cases in which courts have rejected the idea that the smell of burning marijuana is sufficient to support a finding of exigency. With one exception, we believe that these cases are distinguishable because they are missing the two critical elements present in the cases discussed above. In these cases, the police either learned about the marijuana while outside of the premises (as opposed to while standing at an open door), and/or the residents were unaware of the police presence or detection of the drugs. Thus, the police had ample time to obtain a warrant before entry. *See Johnson v. U.S.*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (no exigency where police were informed that hotel guests were smoking opium before they knocked on the door and smelled it, and thus could have obtained a warrant); *Kan. v. Schur*, 217 Kan. 741, 538 P.2d 689 (1975) (no exigency where officer noticed marijuana cigarette through glass door of apartment before his presence was known to resident and could have obtained a warrant on the plain sight of the cigarette); *Haw. v. Dorson*, 62 Haw. 377, 615 P.2d 740, 746 (1980) (no exigency where defendant had already been arrested for marijuana possession *outside* the home, and officers' "sole and avowed purpose in going to the ... residence was to secure the premises"); *La. v. Summers*, 440 So.2d 911 (La.Ct. App.1983)(no exigency where officers entered apartment to "maintain their observation" of negligent driving suspect retrieving license, rather than to prevent destruction of marijuana); *Ill. v. Hoffstetter*, 128 Ill.App.3d 401, 83 Ill.Dec. 827, 470 N.E.2d 1247 (1984)(no exigency where there was no evidence residents of apartment knew officers were present, police "thought" they smelled marijuana, and entered only out of "curiosity"); *Howe v. Nev.*, 112 Nev. 458, 916 P.2d 153 (1996) (warrantless entry to prevent destruction of marijuana unreasonable, in part because officers believed marijuana was not inside, but outside of the house).

Although one of the cases Gorman relies upon is not distinguishable, we simply disagree with its holding. *See Ware v. Ind.*, 782 N.E.2d 478 (Ind.Ct.App.2003)(warrantless entry unreasonable where officer was at apartment investigating unre-

lated incident, smelled burning marijuana upon door opening, and heard occupant walk around for three minutes while obtaining identification).

We conclude that the circuit court did not err in determining that the State met its burden to demonstrate exigency. Contrary to Gorman's assertion, it was not necessary that the State prove that Painter was in fact in the process of destroying evidence. It is enough that Sgt. Nalewajkl had the reasonable belief that Painter, or someone else inside the apartment, would destroy the marijuana should the Sergeant leave to obtain a warrant. *See Grissett*, 925 F.2d at 778 (inquiry should focus on "what an objective officer could reasonably believe"); *Williams*, 372 Md. at 403, 813 A.2d 231 (determination of exigency made considering "the facts as they appeared to the officers at the time of the entry").

## II.

### Gravity Of The Offense

■ Gorman next maintains, citing *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984), that even if they are present, "exigent circumstances will rarely justify a warrantless entry of a home" for police to make an arrest for a "minor offense." He contends that possession of marijuana is a minor offense because the maximum penalty is one year imprisonment and/or a $1000 fine, *see* Md.Code, Crim. Law § 5–601(c)(2)(2002, 2005 Cum. Supp.). He compares the maximum penalty for possession of other controlled dangerous substances, including prescription drugs, which is four years imprisonment and/or a $25,000 fine. *See* Md.Code, Crim. Law § 5–601(c)(1). He also points out that the Maryland State Commission on Criminal Sentencing Policy has placed marijuana possession in the seventh, or least serious, of the seven "seriousness categories." *See* Maryland Sentencing Guidelines Manual, Appx. A at 8 (Feb. 2006)(available online at http://www.msccsp. org/guidelines/index .html) (last visited 04/12/06).

The State, on the other hand, argues that marijuana possession is not a minor offense because a conviction subjects the defendant to the possibility of imprisonment. The State relies on *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), to contend that an offense that is "jailable" is not a minor offense. It urges us to agree with a Virginia appellate court, *see Cherry v. Virginia*, 44 Va.App. 347, 605 S.E.2d 297, 307 (2004), that reached the same conclusion:

> [T]he Supreme Court ... intimated in *McArthur*, that if any bright line exists for warrantless entries into the home, it should be drawn between jailable and nonjailable offenses rather than between felonies and misdemeanors.

Gorman responds that the *Cherry* Court's reasoning is "deeply flawed," and that "[i]t misinterprets the Supreme Court's opinion in *Illinois v. McArthur*[.]" He claims that "[d]rawing the line between jailable and nonjailable offenses is directly contrary to the reasoning and spirit of *Welsh*," and that in *McArthur*, 531 U.S. at 336, 121 S.Ct. at 953, "the Court explicitly *did not decide* 'whether the circumstances [of that case] would have justified [a warrantless entry] for this type of offense.'" Gorman interprets *Welsh* to define a minor offense as "one where the government's interest in prosecution does not outweigh the strong interest of the individual and of society in protecting the sanctity of the home from government intrusion." He suggests that the "gravity of the offense" question can be answered by drawing a line between violent and non-violent crimes.[7]

---

7. Gorman relies on the Supreme Court of Idaho's decision in *Idaho v. Curl*, 125 Idaho 224, 869 P.2d 224 (1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 646 (1994), to support this argument. Although Gorman's brief suggests that he would disagree, in 2004, the Idaho Supreme Court determined that "the *Curl* Court did not accurately predict the criteria upon which the Supreme Court would ultimately draw the line" when defining minor offenses. *Idaho v. Fees*, 140 Idaho 81, 90 P.3d 306, 313 (2004). The *Fees* Court decided that, pursuant to *McArthur*, the "line" should be drawn not between violent and non-violent crimes, but "based upon the nature of the penalty." *Id.*

In support of his argument, Gorman points out that in Maryland, certain seemingly innocuous offenses—including cutting hair without a license, allowing one's child to "play hooky" from school, or leading a funeral procession through Druid Hill Park without written permission—are all "jailable." *See* Md.Code, Bus. Occ. & Prof. §§ 4–601, 4–607 (1989, 2004 Repl. Vol.); Md.Code, Educ. § 7–301 (1978, 2004 Repl. Vol., 2005 Cum. Supp.); Md.Code, Bus. Reg. § 5–802 (1992, 2004 Repl. Vol.). In any event, he asserts, because defendants are rarely sentenced to imprisonment for marijuana possession, distinguishing between "jailable" and "nonjailable" offenses is meaningless.

We first turn to the Supreme Court's decision in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). In *Welsh,* police officers entered the appellant's home and arrested him for driving or operating a motor vehicle while under the influence of an intoxicant. For a first offense in Wisconsin at the time, driving or operating under the influence resulted in a civil forfeiture and a maximum fine of $200, with no incarceration. *See* 466 U.S. at 746, 104 S.Ct. at 2095.

Writing for the Court, Justice Brennan concluded that the warrantless entry was unlawful. He explained that when police enter a home to arrest for a "minor offense" such as the one at issue there, the exigent circumstances exception will rarely apply:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor ... When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness [that attaches to all warrantless home entries] is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750, 104 S.Ct. at 2098 (footnote omitted). In so concluding, the Court relied on Justice Jackson's explanation, in a prior concurrence, that warrantless entries to arrest or search for minor offenses "display[ ] a shocking lack of all sense of proportion." *Id.* at 751, 104 S.Ct. at 2098 (quoting *McDonald v. U.S.*, 335 U.S. 451, 459, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948) (Jackson, J., concurring)).

The Court summarized that, while "the gravity of the underlying offense" is "**an important factor** to be considered when determining whether any exigency exists," "application of the exigent-circumstances exception in the context of a home entry should **rarely** be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Id.* at 753, 104 S.Ct. at 2099. Stated another way, "the minor nature of the offense **could** trump any showing of exigencies based on a risk of evidence loss if a warrant was first obtained." Wayne R. LaFave, *Criminal Procedure*, § 3.6(e), n. 99.1 (2d ed. 1999, 2006 Supp.).

In *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the Supreme Court revisited *Welsh*. In that case, police officers accompanied McArthur's wife to her home, at her request, so that she could remove personal belongings peaceably. When she left the house, the wife mentioned to one of the officers that her husband "had dope" inside. 531 U.S. at 329, 121 S.Ct. at 949. The officers knocked on the door, told McArthur what his wife said, and sought his consent to enter. He refused, but because by that time he had stepped outside, the police ordered him to remain outside unless accompanied in by a police escort. Meanwhile, one officer left to obtain a warrant. McArthur did reenter his home several times to get cigarettes, but each time a police officer "stood just inside the door to observe what [he] did." *Id.* When they executed the warrant, the police discovered marijuana and paraphernalia.

The Supreme Court overturned the suppression of the contraband. It rejected McArthur's argument, premised on

*Welsh,* that marijuana possession was a minor offense because it was a misdemeanor:

> We ... find significant distinctions [from *Welsh*]. The evidence at issue here was of crimes that were "jailable," not "nonjailable." In *Welsh,* we noted that, "[g]iven that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." The same reasoning applies here[.]

*Id.* at 336, 121 S.Ct. at 952 (citations omitted).

As an additional ground for its decision, the Court reasoned that "[t]emporarily keeping a person from entering his home ... is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search." *Id.* at 336, 121 S.Ct. at 953. The Court specifically **did not answer** the question of "whether the circumstances before [it] would have justified a greater restriction for this type of offense or the same restriction were only a 'nonjailable' offense at issue." *Id.*

In *Dunnuck v. State,* 367 Md. 198, 209, n. 4, 786 A.2d 695 (2001), the Court of Appeals specifically refused to determine whether marijuana possession was a "minor offense" such that a warrantless entry could not be justified by exigency.[8] This issue is therefore a matter of first impression in Maryland.

Our review of other decisions made after *McArthur* reveals that many courts have interpreted *McArthur* to establish a bright line rule that "jailable" offenses are not "minor." [9] *See,*

---

**8.** As explained above, the Court in *Dunnuck* determined that there was no exigency in any event because any "exigency" was created by the police. *See Dunnuck v. State,* 367 Md. 198, 215, 786 A.2d 695 (2001).

**9.** In the years **between** *Welsh* and *McArthur,* various courts did determine that marijuana possession was a minor offense. *See, e.g., Wash. v. Ramirez,* 49 Wash.App. 814, 746 P.2d 344 (1987) (drawing distinction between misdemeanors and felonies); *Ill. v. Day,* 165 Ill.App.3d 266, 116 Ill.Dec. 525, 519 N.E.2d 115 (1988), *cert. denied,* 121 Ill.2d 575,

*e.g., Idaho v. Fees,* 140 Idaho 81, 90 P.3d 306, 313 (2004)("the Supreme Court has drawn [the line] based upon the nature of the penalty"); *Cherry v. Va.,* 44 Va.App. 347, 605 S.E.2d 297, 307 (2004)("the Supreme Court ... intimated in *McArthur,* that if any bright line exists for warrantless entries into the home, it should be drawn between jailable and nonjailable offenses"); *Rideout v. Wyo.,* 122 P.3d 201, 210 (Wyo. 2005)("The unmistakable implication of the discussion in *McArthur* is that the distinction ... is predicated upon whether the subject offense carries a potential jail term.").

Because the Fourth Amendment is grounded on reasonableness, we decline to establish a bright line rule, for example, that all "jailable" offenses, or all felonies, are not minor for purposes of warrantless entries. *See Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)(in applying Fourth Amendment "reasonableness" test, "we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry"). *See also* Eugene Volokh, *Crime Severity and Constitutional Line–Drawing,* 90 Va. L. Rev. 1957 (Nov. 2004)(discussing inherent difficulty with "drawing lines" to determine the severity of crimes for purposes of various constitutional questions); *Welsh,* 466 U.S. at 761–62, 104 S.Ct. at 2103–04 (White & Rehnquist, JJ., dissenting)(expressing discontent that "the Court's approach will necessitate a case-by-case evaluation of the seriousness of particular crimes").

We interpret *McArthur* to view "jailability" as merely one factor to consider in determining whether, **in a particular case,** "the government's interest is only to arrest for a minor offense." *Welsh,* 466 U.S. at 750, 104 S.Ct. at 2098. The *McArthur* Court clearly based its decision on an additional

---

122 Ill.Dec. 441, 526 N.E.2d 834 (1988) (considering whether offense was a "crime of violence"); *Idaho v. Curl,* 125 Idaho 224, 869 P.2d 224 (1993), *cert. denied,* 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 646 (1994) (drawing the line between violent and non-violent offenses); *N.J. v. Holland,* 328 N.J.Super. 1, 744 A.2d 656 (App.Div.2000), *cert. denied,* 328 N.J.Super. 1, 744 A.2d 656 (2000) (reasoning that possession of less than 50 grams of marijuana was only a "disorderly persons" offense).

factor as well: its belief that asking someone to wait outside his home was "less intrusive" than forcibly entering a home without permission. 531 U.S. at 336, 121 S.Ct. at 953. *See also* LaFave, *Criminal Procedure,* § 3.6(e), n. 113.2 (2d ed. 1999, 2006 Supp.) (*McArthur* Court distinguished *Welsh* based on **both** "jailability" and the "less serious" nature of the restriction). It also explicitly declined to consider whether the case would have justified a "greater restriction," for example, with a nonconsensual entry for a "jailable" offense, or whether a lesser restriction would be acceptable for a "nonjailable" offense. 531 U.S. at 336, 121 S.Ct. at 953.

We conclude that, under the facts and circumstances of Gorman's case, this warrantless entry was not presumptively unreasonable because it was merely for a minor offense. We consider first, that marijuana possession is subject to a $1,000 fine and up to one year in prison. Md.Code, Crim. Law § 5–601(c)(2). The *Welsh* Court, while not establishing a *per se* rule, did conclude that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that crime." 466 U.S. at 754, n. 14, 104 S.Ct. at 2100, n. 14.

Second, we consider the additional factor that this particular warrantless entry was "less intrusive" than Gorman alleges. *McArthur,* 531 U.S. at 336, 121 S.Ct. at 953. Nalewajkl accompanied Harmon to *her apartment* in the course of *her cooperation* in a routine shooting investigation. It was clear that their purpose in going to the apartment was merely to retrieve Harmon's shoes. As the suppression court observed, "under almost any version of this case, the sergeant [was] at the door in a benign situation ... he c[ame] armed with no suspicions." While he did not have explicit consent to do so, Nalewajkl's entry into the apartment on Harmon's heels was less intrusive than if he been alone, knocked on the door of the apartment and demanded to enter, or forcibly entered after Painter or Harmon refused him entry.

On the basis of these two factors, we conclude that this is simply not a case in which Painter's right to be secure in his home, relative to the offense he was suspected of committing, "display[ed] a shocking lack of all sense of proportion." *Welsh,* 466 U.S. at 751, 104 S.Ct. at 2098 (citations omitted). Thus, the trial court did not err in finding that Sgt. Nalewajkl's warrantless entry into Gorman's apartment was reasonable under the circumstances.

## CONCLUSION

For all of the aforegoing reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**