# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 122

**APRIL TERM, A.D. 2013**

**October 4, 2013**

| | |
|---|---|
| TERRY SMITH, | |
| Appellant (Defendant), | |
| v. | S-12-0230 |
| THE STATE OF WYOMING, | |
| Appellee (Plaintiff). | |
| DENA T. BLOMQUIST, | |
| Appellant (Defendant), | |
| v. | S-12-0231 |
| THE STATE OF WYOMING, | |
| Appellee (Plaintiff). | |

*W.R.A.P. 11 Certification from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant Terry Smith:*
　　Christopher S. Leigh of Jackson, Wyoming.

*Representing Appellant Dena T. Blomquist:*
　　Richard D. Stout of DeFazio Law Office, LLC, Jackson, Wyoming.

*Representing Appellees:*

Gregory A. Phillips, Wyoming Attorney General; Peter K. Michael, Interim Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Jeffrey S. Pope, Assistant Attorney General; Christyne Martens, Assistant Attorney General; D. Terry Rogers and Clark C. Allan, Special Assistant Attorneys General.  Argument by Mr. Rogers.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]   On November 6, 2012, this Court issued a Notice of Agreement to Answer Certified Questions in these two unrelated cases.  The questions we agreed to answer were stated as follows:

> 1.  Did the Teton County Circuit Court err when it found that the remotely communicated search warrants, which were not based upon affidavit, issued pursuant to W.S. 31-6-102(d), do not violate Wyo. Const. art. 1, § 4?
>
> 2.  Did the Teton County Circuit Court err when it found that the remotely communicated search warrants do not have to comply with the requirements of W.R.Cr.P. 41?

[¶2]   We later concluded that, because the wording of the first question is such that it may be construed to be based upon a faulty legal premise, as will be discussed below, and because of clarification of search and seizure law by the United States Supreme Court in the interim, the questions should be re-phrased to better provide guidance to the State's courts.  Consequently, we issued an Order Requiring Briefing on Revised Certified Questions, in which we re-stated the questions as follows:

> 1.  Do the procedures set forth in Wyo. Stat. Ann. § 31-6-102(d) (LexisNexis 2011) comply with the affidavit requirements of Wyo. Const. art. 1, § 4?
>
> 2.  Must a remotely communicated search warrant issued pursuant to Wyo. Stat. Ann. § 31-6-102(a) comply with the requirements of W.R.Cr.P. 41?

[¶3]   We reply in the affirmative to both questions.

## FACTS[1]

[¶4]   In separate incidents in Teton County, Wyoming, the two above-named appellants were arrested for driving while under the influence of alcohol (DWUI).  Each appellant's blood-alcohol content was determined via the procedures set forth in Wyo. Stat. Ann. § 31-6-102(d) (LexisNexis 2013).  That is, the circuit court judge issued a remotely communicated search warrant after speaking on the telephone with the arresting officer, who was under oath, and directing the officer to affix the judge's signature to the search

---

[1] These facts are derived from the statements of fact contained in the Order Certifying Question to Supreme Court issued in each case, as well as the Order Denying Motions to Suppress attached thereto.

1

warrant. The telephone calls were made by the officers to the judge via a recorded telephone line operated by the Teton County Sheriff's Office Dispatch.

[¶5]  For the limited purpose of answering these questions within the confines of these two cases, we will presume that the officer in each case had probable cause to make the DWUI arrest, that the officer was placed under oath by the judge, that the officer in each case recited to the judge sufficient probable cause for the issuance of a search warrant, and that the recorded conversation can be or has been transcribed. In other words, the limited questions presented are whether the requirements of Wyo. Stat. Ann. § 31-6-102(d) are the equivalent of an affidavit under the state constitution and whether the dictates of W.R.Cr.P. 41(c) must be met.

## WYO. CONST. ART. 1, § 4

[¶6]  Wyoming's state constitutional protections against unreasonable search and seizure are found in Wyo. Const. art. 1, § 4:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, ***supported by affidavit***, particularly describing the place to be searched or the person or thing to be seized.

(Emphasis added.)

## W.R.Cr.P. 41(c)

[¶7]  Wyoming's Rules of Criminal Procedure provide the procedural requirements for the issuance of a search warrant at W.R.Cr.P. 41(c):

> (c) *Issuance and content of warrant.*—A warrant shall issue only on ***affidavit*** sworn to before a person authorized by law to administer oaths and establishing the grounds for issuing the warrant. If the judicial officer is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, the judicial officer shall issue a warrant particularly identifying the property or person to be seized and naming or describing the person or place to be searched. Before ruling on a request for a warrant ***the judicial officer may require the affiant to appear personally and may examine under oath the affiant*** and any witnesses the affiant may produce, provided that such

2

proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to any officer authorized to enforce or assist in enforcing the state law. It shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified. The warrant shall direct that it be served between 6 a.m. and 10 p.m., unless the issuing authority, by appropriate provision in the warrant, and reasonable cause shown, authorizes its execution at other times. It shall designate the judicial officer to whom it shall be returned.

(Emphasis added.)

## WYO. STAT. ANN. § 31-6-102(d)

[¶8]   The statutory procedure for remotely communicated search warrants in DWUI cases is found at Wyo. Stat. Ann. § 31-6-102(d):

(d)   If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given except in cases where serious bodily injury or death has resulted or upon issuance of a search warrant. A test of the agency's choice may be administered upon issuance of a warrant, including a remotely communicated search warrant, when reasonable under the circumstances and as provided in this subsection. A remotely communicated search warrant may be issued upon sworn or affirmed testimony of the peace officer who is not in the physical presence of a judicial officer, provided the judicial officer is satisfied that probable cause exists for the issuance of the warrant. All communication between the judicial officer and the peace officer or prosecuting attorney requesting the warrant may be remotely transmitted by voice, image, text or any combination thereof, or by other means and shall be recorded. The testimony and content of the warrant shall be recorded by writing or mechanical, magnetic, electronic, photographic storage or by other means. Upon approval, the judicial officer may direct a

3

peace officer or the prosecuting attorney requesting a warrant from a remote location to sign the judicial officer's name on a warrant at a remote location. A remotely communicated search warrant shall be valid only for purposes specified in this subsection.

**STANDARD OF REVIEW**

[¶9] Certified questions are questions of law that are reviewed *de novo* pursuant to W.R.A.P. 11. *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 4, 277 P.3d 81, 83 (Wyo. 2012); *Sublette Cnty. Sch. Dist. No. Nine v. McBride*, 2008 WY 152, ¶ 14, 198 P.3d 1079, 1083 (Wyo. 2008).

**DISCUSSION**

[¶10] We begin this discussion by reference to a very recent opinion of the United States Supreme Court wherein it was held that "the natural metabolization of alcohol in the bloodstream [does not present] a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S.Ct. 1552, 1556, 185 L.Ed.2d 696 (2013). In other words, the Fourth Amendment to the United States Constitution demands that, absent an exigency or other exception to the general rule, a search warrant is required to draw blood for a blood-alcohol test in a DWUI case, with reasonableness of the search to be determined under all the attending circumstances. The parties suggest that *McNeely* is irrelevant to the issues in the instant case, but we asked for re-briefing because the circuit court relied specifically upon *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Schmerber's* material point, as will be discussed below, was overruled by *McNeely*.

[¶11] Perhaps it will be helpful at this point to summarize what we have just said about the status of the law in regard to the necessity for law enforcement officers to obtain a search warrant before determining an arrestee's blood-alcohol content via the withdrawal of a blood sample. The law of *Schmerber*—that the metabolization of alcohol in the blood is a *per se* exigency that creates an exception to the requirement to obtain a search warrant—has been overruled by the law of *McNeely*—which holds that the metabolization of alcohol in the blood is not a *per se* exigency that creates an exception to the requirement to obtain a search warrant. *McNeely*, ___ U.S. at ___, 133 S.Ct. at 1563. The result is that whether a search warrant must be obtained before obtaining the blood sample depends upon reasonableness under all of the circumstances then attaining. That law is the same under the federal constitution and the state constitution. That leaves the question of whether the statutory requirements for obtaining a remotely communicated warrant are the equivalent of the state constitution's more stringent requirement for an affidavit, rather than the federal constitution's requirement of only an

4

oath or affirmation, and it leaves the question of whether a remotely communicated search warrant under the statute must meet the requirements of W.R.Cr.P. 41.

[¶12] Inasmuch as states are not permitted to impose less stringent standards than the U.S. Constitution when protecting individual rights, the same search warrant requirements, or requirements equivalent thereto, must apply under article 1, section 4 of the Wyoming Constitution. *Saldana v. State*, 846 P.2d 604, 632 (Wyo. 1993). Furthermore, Wyo. Stat. Ann. § 3-6-102(d) cannot stand alone as some sort of "statutory warrant" that need not meet constitutional dictates.[2] That proposition leads to the first question—are the statutory procedures for obtaining a remotely communicated search warrant the equivalent of the state constitution's affidavit requirement? We must ask this question because, unlike the Fourth Amendment, which requires only that probable cause for issuance of a warrant be supported by "oath or affirmation," the Wyoming Constitution requires that such be supported "by affidavit."

[¶13] It is in this legal context that we note the nature of the questions before us. We are not determining whether, as a matter of fact, either the arrest or blood-alcohol content test was supported by probable cause or was reasonable. We are only determining whether the procedures dictated by statute are sufficient under the state constitution and the court rule.

### *The Affidavit Requirement*

[¶14] This Court has repeatedly held that use of the word "affidavit" in article 1, section 4 of the Wyoming Constitution, rather than the words "oath or affirmation" that appear in the Fourth Amendment to the United States Constitution, means that the former provides greater protection than the latter. *See e.g., Crackenberger v. State*, 2006 WY 162, ¶ 7, 149 P.3d 465, 470 (Wyo. 2006); *O'Boyle v. State*, 2005 WY 83, ¶ 24, 117 P.3d 401, 408 (Wyo. 2005); *Hall v. State*, 911 P.2d 1364, 1368 (Wyo. 1996). Beyond that, we have stated that an affidavit must be in written form. *State v. Peterson*, 27 Wyo. 185, 194 P. 342, 345 (1920). That definition is consonant with the generally accepted definition. *See Black's Law Dictionary* 66 (9th ed. 2009). The specific question before us, therefore, is whether a recorded telephone conversation, which conversation has been or may be transcribed into written form, satisfies the Wyoming Constitution's affidavit requirement. In that regard, we will point out that we have identified the greater protection provided by the affidavit requirement as being the creation of a permanent written record. *Cordova v. State*, 2001 WY 96, ¶ 8, 33 P.3d 142, 147 (Wyo. 2001); *Vasquez v. State*, 990 P.2d 476, 483 (Wyo. 1999). The overarching question should be whether the statutory remotely communicated search warrant procedures provide the same protection.

---

[2] In its Order Denying Motions to Suppress, the circuit court characterized the remotely communicated search warrant as a "statutory search warrant" that need not comply with the state constitution. We know of no such creature.

5

[¶15] It is instructive to consider how other state courts have handled similar issues and to realize that, because of differences in constitutional language, statutory language, and court rule language, they are "all over the place." In Idaho, for instance, where the search warrant provision of that state's constitution requires that "no warrant shall issue without probable cause shown by affidavit," the Supreme Court of Idaho has held that "the word 'affidavit' is broad enough to include the recording of sworn testimony." *State v. Badger*, 525 P.2d 363, 365 (Idaho 1974). Going on, the court stated:

> We find no express requirement of a "written" affidavit and our holding does no violence to the purpose or spirit of our constitution but merely recognizes modern advances in technology.

*Id*.

[¶16] In an opinion published thirty years after *Badger*, the Supreme Court of Idaho re-iterated its holding in *Badger*, and expanded that opinion to include the conclusion that the words "[a] warrant shall issue only on an affidavit or affidavits sworn to before a district judge or magistrate" found in a rule of criminal procedure did not require the affiant to appear physically before the judge. *State v. Bicknell*, 91 P.3d 1105, 1107 (Idaho 2004). And just prior to the publication of *Bicknell*, the same court held that a magistrate could authorize a law enforcement officer to affix the magistrate's signature to the warrant. *State v. Fees*, 90 P.3d 306, 310 (Idaho 2004). Clearly, the Supreme Court of Idaho takes an expansive view of all of that state's search warrant affidavit requirements.

[¶17] In *State v. Boyse*, 303 P.3d 830, 831 (N.M. 2013), the New Mexico Supreme Court was faced with the question of whether the request for and approval of a search warrant by telephone satisfied New Mexico's state constitution's requirement that a search warrant be based upon "a written showing of probable cause." The court held that "showing" means "a presentation or statement of facts that can be made through audible or other sensory means as well as through visual means." *Id*. In reaching the conclusion that telephonic search warrants are not unconstitutional in New Mexico, the court emphasized the fact that other states' precedent was difficult to apply because of different constitutional, statutory, and court rule contexts. *Id*. at 836-37.

[¶18] It would be unrealistic to find that all states view the issue of remotely communicated search warrants—telephone warrants—from the same perspective. *State v. Valencia*, 459 A.2d 1149 (N.J. 1983), is illustrative of that observation. We will quote at some length from *Valencia* because it so thoroughly enunciates the point of view contrary to that of the Supreme Court of Idaho:

A primary objective of our rules governing search warrants is to enhance the soundness and integrity of the judicial decisional process entailed in their issuance. [The court rule] contemplates that an application for a search warrant will furnish the issuing judge with credible and reliable evidence of probable cause. It clearly and unequivocally demands that the officer seeking the warrant "shall appear personally before the [issuing] judge." Testimony in the judge's presence safeguards the individual's rights under [the] Fourth Amendment and the State Constitution. The presence of the applicant, along with the testimony or affidavits of any witnesses, leads to a more thorough and deliberate examination of the factual basis for issuing the warrant. . . .

. . . .

In this case there are several obvious and major departures from the requirements of the search warrant rules. The applicant did not appear personally before the issuing judge. Further, as found on the motion to suppress, the testimony offered in support of the warrant was not duly sworn or given under oath. The notes of the issuing judge were not, arguably, a complete contemporaneous recordation of the oral application. Finally, the authorization itself was issued verbally. As a result, the subsequent written warrant cannot be reliably compared to any prior recordation to determine its fidelity to the contents of the original application and oral authorization.

. . . We conclude that since [the court rule] is presently the sole determinant as to what constitutes a "search warrant," the telephonically authorized search must be viewed as a warrantless search.

The question next posed is whether, and by what standards, a "warrantless" search that has been judicially authorized over the telephone can otherwise be sustained as a constitutionally reasonable search. To sustain a warrantless search, the State must ordinarily demonstrate that exigent circumstances prevented obtaining a written warrant and that probable cause for the search existed.

7

. . . .

> . . . We now hold that to sustain a telephone-authorized search, the State must still show the existence of probable cause to search. In addition, the State must demonstrate to the issuing judge that the failure to secure a written warrant is necessitated by "exigent circumstances."

*Id*. at 1153-54 (citations omitted).

[¶19] In *White v. State*, 842 So.2d 565, 568-69 (Miss. 2003), the Supreme Court of Mississippi took a position quite similar to that taken by the New Jersey Supreme Court in *Valencia*:

> While not statutorily provided for in Mississippi, telephonic search warrants could possibly act as a buffer against warrantless searches which often undermine Fourth Amendment protections. In the trial court's ruling as to the reasonableness of the search, the judge stated his belief that this Court would prefer "a finding of probable cause by a neutral and detached magistrate telephonically" in a situation where the only other alternative would be a warrantless search. While this may be true, there are other problems with this procedure which warrant[] a detailed examination and discussion by this Court. If exigent circumstances existed so as to preclude obtaining a proper search warrant, as long as the officers were in good faith in their request and followed other procedural safeguards, evidence found as a result of the issuance of a "telephonic search warrant" would be admissible at trial. However, nothing under current Mississippi law provides for this type of search warrant.
>
> . . . .
>
> It is for this Court as the final interpreter of Mississippi's Constitution to determine the legality of this type of search. *Penick v. State*, 440 So.2d 547, 551 (Miss. 1983). This Court finds that the search was a warrantless search, as Mississippi has yet to recognize the viability of telephonic warrants. In *Boyd v. State*, 206 Miss. 573, 40 So.2d 303 (1949), we reversed a conviction based on the illegality of a warrant. There the officer had signed the affidavit at his office, and a judge in another county signed

8

off on the warrant. The officer never appeared before the judge, and thus the warrant was illegally obtained. We note that the process of appearing before the judge is important in Mississippi. The current status of our law requires the affiant's and the affidavit's presence before the issuing magistrate before a search warrant may properly issue. *See* Miss.Code Ann. § 41-29-157(a)(2) (2001). The form of an affidavit for a search warrant also indicates the presence of the affiant at issuance. *See* Miss.Code Ann. § 99-25-15 (2000). Thus, by requiring a sworn affidavit before issuance of a warrant, we insure the affidavit is free from facts which might be discovered later and included in a subsequently filed affidavit to support the finding of probable cause. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

[¶20] Two other cases frequently cited in the telephonic search warrant debate—*State v. Myers*, 815 P.2d 761 (Wash. 1991), and *People v. Taylor*, 555 N.E.2d 1218 (Ill. App. Ct. 3d Dist. 1990)—are not, in this Court's opinion, very helpful to the resolution of the present issue. In *Myers*, the equipment used to record the warrant application failed, leaving the officer and the judge to attempt during the suppression hearing to reconstruct their telephonic conversation. *Myers*. 815 P.2d at 764. The Supreme Court of Washington held that the reconstructed affidavit was insufficient because it prevented judicial review of the sufficiency of probable cause. *Id.* at 768. That distortion of the focal question is not present in our case. Similarly, in *Taylor*, the court held that, not only did no state statute authorize telephonic search warrants, the warrant at issue was technically deficient because of the absence of date, time, and judicial signature. 555 N.E.2d at 1221. These complicating factors also do not impair the direct question presented in our case.

[¶21] We begin our own discussion of this issue with two general observations. First, statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute must overcome this strong presumption. *Thomson v. Wyo. In-Stream Flow Comm.*, 651 P.2d 778, 789-90 (Wyo. 1982). Second, this Court has repeatedly recognized the "strong preference under the law for law enforcement officers to obtain a warrant instead of engaging in a warrantless search." *Holzheuser v. State*, 2007 WY 160, ¶ 7, 169 P.3d 68, 74 (Wyo. 2007). *See also Page v. State*, 2003 WY 23, ¶ 9, 63 P.3d 904, 909 (Wyo. 2003); *Cordova*, 2001 WY 96, ¶ 11, 33 P.3d at 148; and *Davis v. State*, 859 P.2d 89, 94 (Wyo. 1993).

[¶22] Interestingly enough, some members of the defense bar, recognizing that the availability of a remote search warrant procedure in DWUI situations is actually an additional protection for the defendant, have begun to base motions to suppress upon the

failure of law enforcement to obtain a remotely communicated warrant where the procedure is available.

> If defense lawyers begin moving to suppress evidence because the police have not utilized existing technology to seek to obtain electronic search warrants, courts will begin suppressing evidence. The police will respond to this depressing state of affairs (for them, not for the defendants and their lawyers) and begin utilizing electronic search warrant procedures. This will result in more search warrants being issued, thus protecting citizens from the potential harm from unwarranted intrusions into private places by police officers "engaged in the often competitive enterprise of ferreting out crime." New life will be breathed into the Fourth Amendment (and state constitutions' parallel provisions).

John Henry Hingson, III, *Telephonic and Electronic Search Warrants: A Fine Tonic for an Ailing Fourth Amendment--Part One*, Champion 38 (September/October 2005). *See also* John Henry Hingson, III, *Telephonic and Electronic Search Warrants: A Fine Tonic for an Ailing Fourth Amendment--Part Two*, Champion 34 (November 2005) ("[T]he failure of the police to employ that technology can be used to cement the strength of the warrant requirement of our beloved Fourth Amendment. Unless bullets are flying, or blood is flowing, the warrant requirement should reign supreme."), and H. Morley Swingle & Lane P. Thomasson, *Beam Me Up: Upgrading Search Warrants With Technology*, 69 J. Mo. B. 16 (2013).

[¶23] Although this does not answer the affidavit question, we will note that the United States Supreme Court has spoken to the need to recognize technological advances in the search warrant arena:

> The State's proposed *per se* rule also fails to account for advances in the 47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple. The Federal Rules of Criminal Procedure were amended in 1977 to permit federal magistrate judges to issue a warrant based on sworn testimony communicated by telephone. See 91 Stat. 319. As amended, the law now allows a federal magistrate judge to consider "information communicated by telephone or other reliable electronic means." Fed. Rule Crim. Proc. 4.1. States have

10

also innovated. Well over a majority of States allow police officers or prosecutors to apply for search warrants remotely through various means, including telephonic or radio communication, electronic communications such as e-mail, and video conferencing.[] And in addition to technology-based developments, jurisdictions have found other ways to streamline the warrant process, such as by using standard-form warrant applications for drunk-driving investigations.[]

*McNeely*, ___ U.S. at ___, 133 S.Ct. at 1561-62.[3] While there are states that remain resistant, the idea of telephonic search warrants is treated as a foregone conclusion at 68 Am. Jur. 2d S*earches and Seizures* § 188 (2010). The question for us is whether there is something inherent in the word "affidavit," as it appears in article 1, section 4 of the Wyoming Constitution, that prohibits this Court from finding that the procedures outlined in Wyo. Stat. Ann. § 31-6-102(d) are not the substantive equivalent of a written document.

[¶24] There are too many cases to cite for the accepted proposition that the constitutional affidavit requirement provides two protections for a defendant. First, it guarantees that an impartial judicial officer will determine whether probable cause exists based upon a review of specific sworn testimony. Second, it ensures that such sworn testimony will be preserved for potential later review by an appellate court. We can only conclude that the procedures for a remotely communicated search warrant set forth in Wyo. Stat. Ann. § 31-6-102(d) provide equal protections. In addition, the availability of such a procedure increases the likelihood that a search warrant will be obtained in DWUI arrest situations, and it greatly decreases the amount of time necessary to obtain the warrant.

[¶25] Historically, an affidavit was a "written" instrument. We do not believe that the statute or this opinion changes that fact. What has changed over time, because of technological advances, is the meaning of the word "written." Recorded sworn testimony, which if preserved, and from which a transcript may be produced, is as much a "writing" in today's world as was a quill-penned line on a piece of parchment two centuries ago. To conclude otherwise would ignore today's technological realities, and would place form over substance. We decline to view the law in so restrictive a fashion.

[¶26] We answer the first certified question in the affirmative. That is, the procedures set forth in Wyo. Stat. Ann. § 31-6-102(d) do comply with the affidavit requirements of Wyo. Const. art. 1, § 4.

---

[3] We omitted the footnotes from the quoted material, one of which lists the State of Wyoming as one of the states allowing remotely communicated search warrants.

*W.R.Cr.P. 41(c)*

[¶27] A remotely communicated search warrant issued pursuant to Wyo. Stat. Ann. § 31-6-102(d) is distinguishable from other search warrants in that it is limited to a particular type of evidence gathering in a particular type of crime. By its own language, it is "valid only for purposes specified in this subsection." At the same time, there is nothing about the context in which it is issued that requires it to be treated differently than any other search warrant in the particulars governed by W.R.Cr.P. 41(c). A close reading of W.R.Cr.P. 41(c) reveals that it contains no provision that cannot be met in the issuance of a remotely communicated search warrant under the statute. Paraphrasing the rule, we note that, in addition to the affidavit requirement, which has been discussed above, W.R.Cr.P. 41(c) provides that (1) the issuing officer *may* require the affiant to appear personally; (2) the warrant must with particularity identify the property or person to be seized and or searched; (3) a record of the proceedings be made by a court reporter or recording equipment; (4) the warrant be directed to an officer authorized to enforce or assist in enforcing state law; (5) the grounds for probable cause for the warrant's issuance and the names of the persons supplying affidavits be stated in the warrant; (6) the search of the named person or place be conducted within a specific period of time not to exceed ten days; (7) the warrant be served between 6:00 a.m. and 10:00 p.m., unless the issuing authority provides otherwise in the warrant based upon reasonable cause; and (8) the warrant shall designate the judicial officer to whom the warrant shall be returned.

[¶28] Wyo. Stat. Ann. § 31-6-102(d) and W.R.Cr.P. 41(c) complement, rather than contradict, one another. There is no reason that an officer seeking a remotely communicated search warrant under the statute cannot also comply with the rule. The same is true of the issuing judicial officer. In fact, there are procedural protections in W.R.Cr.P. 41(c) that would seem to have particular application in the context of a telephonically obtained search warrant. For instance, inasmuch as the record is being made electronically, rather than on paper, it is likely that no transcription thereof will be available at the time the warrant is served, meaning that the subject of the warrant would not know the reasons for the judicial officer's finding, or the scope of the warrant, unless the probable cause finding is contained within the warrant.

[¶29] We answer the second certified question in the affirmative. That is, a remotely communicated search warrant issued pursuant to Wyo. Stat. Ann. § 31-6-102(d) must comply with the provisions of W.R.Cr.P. 41(c).

## CONCLUSION

[¶30] The procedures set forth in Wyo. Stat. Ann. § 31-6-102(d) do not violate Wyo. Const. art. 1, § 4. Search warrants issued pursuant to Wyo. Stat. Ann. § 31-6-102(d) must meet the requirements of W.R.Cr.P. 41(c).