# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51134

| | |
|---|---|
| STATE OF IDAHO,<br><br>       Plaintiff-Respondent,<br><br>v.<br><br>RAMON LUIS RODRIGUEZ, JR.,<br><br>       Defendant-Appellant. | )<br>)  **Filed: September 23, 2025**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)  **THIS IS AN UNPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Judge

Ramon Luis Rodriguez, Jr. appeals from his judgment of conviction for possession of a controlled substance. On appeal, Rodriguez argues that the district court erred by denying his motion to suppress. The State argues there was no error. For the reasons below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Although the district court did not make any factual findings, it emphasized that its holding was based on the only evidence presented--an officer's on-body camera footage.[1] Therefore, this Court's analysis will be similarly limited to a review of the contents of the video.

---

[1] The district court declined to make factual findings, seemingly out of concern that a higher court might later deem those findings clearly erroneous. It is the trial court's obligation to make findings of fact incident to a motion to suppress. This Court does not second guess such findings.

1

The video shows that three officers approached Rodriguez's parked, non-running vehicle in a parking lot and contacted Rodriguez while he sat in the driver's seat. Officer Henman explained the contact was prompted by reports of suspicious behavior, namely a vehicle driving up and down the road with the driver looking into other vehicles. Rodriguez denied he did this but added that his transmission was failing. Rodriguez demonstrated his transmission was faulty by starting the engine and shifting gears. At Officer Henman's request, Rodriguez turned the vehicle off and provided his identification. While retrieving his identification, Rodriguez answered questions about his destination and confirmed that he was on parole. Rodriguez again described his transmission problems, explained his presence in the parking lot, and said he planned to call his mother for a ride. When the officer asked Rodriguez if the officer could search the vehicle, Rodriguez consented to the search. The video ends at this point; however, it is not disputed that the officers located narcotics and paraphernalia in the vehicle.

Ultimately, the State charged Rodriguez with possession of a controlled substance and possession of drug paraphernalia. Rodriguez filed a motion to suppress, alleging the officer who contacted him "abandoned the original purpose of his stop and began detaining him without reasonable, articulable suspicion to pursue a drug investigation." The State could not produce witnesses for the suppression hearing. The only evidence the State and Rodriguez submitted for the hearing was the recording of the officer's on-body camera video.

The district court denied Rodriguez's motion to suppress. The district court concluded Rodriguez was not seized because a reasonable person in his situation would have felt free to leave. Rodriguez entered a conditional guilty plea to possession of a controlled substance (Idaho Code § 37-2732(c)(1)) reserving his right to appeal the denial of his suppression motion. Rodriguez filed a timely notice of appeal.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

Only if the trial court makes findings that are clearly unsupported will this Court hold them to be erroneous.

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). However, where this Court has exactly the same evidence before it as was considered by the trial court (such as a transcript and video), without the presentation of live testimony, this Court does "not extend the usual deference to the district court's evaluation of the evidence." *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018).

## III.

## ANALYSIS

Rodriguez argues that he was seized without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. Rodriguez also argues that, when analyzing whether a seizure occurred, the district court erred by failing to consider Officer Henman's request for Rodriguez's identification. Rodriguez further argues that, even if he was not seized under the United States Constitution, he was seized according to the Idaho Constitution. Finally, Rodriguez argues that, even if he was seized under the Idaho Constitution, his seizure was unlawful as the officers prolonged the detention by abandoning the mission of the stop.

The district court did not make explicit findings of fact when denying Rodriguez's suppression motion. However, the district court concluded that, although the officers had no reasonable suspicion to initiate contact with Rodriguez, they did not detain him. The failure to make explicit findings of fact is not fatal to the determination of a suppression motion. Instead, we should "examine the record to determine the 'implicit' findings which underlie the judge's order." *State v. Middleton*, 114 Idaho 377, 380, 757 P.2d 240, 243 (Ct. App. 1988). To properly ascertain the implicit findings, we look at the evidence available to the district court at the time of the ruling which (at that time) was the officer's on-body camera video.[2]

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from

---

[2]     The first 29 seconds of the video are muted.

unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944.

On the other hand, the United States Supreme Court has outlined circumstances that might indicate a seizure "even where the person did not attempt to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Such circumstances include the threatening presence of several officers, an officer displaying a weapon, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or took action to block a vehicle's exit route. *See State v. Willoughby*, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); *State v. Schmidt*, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct. App. 2002); *Fry*, 122 Idaho at 103, 831 P.2d at 945.

Rodriguez argues that the initial encounter with the officers was not consensual and that he was seized without reasonable suspicion when the officers approached his vehicle on each side, shined flashlights into the vehicle, requested that he turn off his vehicle, and asked for his identification. Rodriguez further argues that a reasonable person would not have felt free to leave upon being asked for identification pursuant to I.C. § 49-316 which requires a driver to surrender a driver's license to a police officer upon demand.

First, the officers did not block Rodriguez's vehicle nor activate their patrol vehicles' overhead emergency lights. Second, the officers' use of flashlights did not make the encounter

4

more intrusive. The Idaho Supreme Court has held that the use of lights to illuminate an area can significantly enhance officer safety and does not constitute a seizure of people in the illuminated area. *State v. Baker*, 141 Idaho 163, 167, 107 P.3d 1214, 1218 (2004). Third, the officers did not display their weapons or make any physical contact throughout the initial encounter. Nor did the officers use a tone of voice indicating compliance with their requests might be compelled. Fourth, the officer's request to turn off the vehicle was not indicative of a seizure because the officer did not exercise any authority for Rodriguez to comply with the order but, rather, it was a request after Rodriguez turned on the vehicle to demonstrate mechanical issues. *See State v. Zubizareta*, 122 Idaho 823, 828, 839 P.2d 1237, 1242 (Ct. App. 1992) (stating that "there is no doubt that the officer requested Zubizareta to turn off the motor, as opposed to ordering him to do so. There was no sign of force or authority beyond the officer's uniform to require Zubizareta to submit or to limit his ability to refuse"). Finally, the officer lawfully asked Rodriguez for identification. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. It was at this moment that Rodriguez consented to the officer's request to search his vehicle. Thus, the officers did not seize Rodriguez without reasonable suspicion. Because the initial encounter with the officers was consensual, Rodriguez is not entitled to suppression of any evidence resulting from the alleged illegal seizure and the district court correctly denied his motion to suppress.

Rodriguez further argues that the officers were in violation of the Idaho Constitution which he contends provides greater protection from governmental interference than the United States Constitution. The Idaho Supreme Court has held that the guarantees under the United States Constitution and the Idaho Constitution are substantially the same. *State v. Fees*, 140 Idaho 81, 88, 90 P.3d 306, 313 (2004). However, the Idaho Supreme Court has, at times, construed the provisions of our Constitution to grant greater protection than that afforded under the United States Supreme Court's interpretation of the federal Constitution. For example, in *State v. Webb*, 130 Idaho 462, 943 P.2d 52 (1997), the Court concluded the United States Supreme Court's definition of curtilage for a Fourth Amendment analysis did not adequately reflect the privacy interests of Idaho citizens under Article I, Section 17 of the Idaho Constitution. Moreover, in *State v. Henderson*, 114 Idaho 293, 756 P.2d 1057 (1988), the Idaho Supreme Court held that roadblocks established to apprehend drunk drivers violate Article I, Section 17 of the Idaho Constitution,

while, in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990), the United States Supreme Court held that such roadblocks do not violate the Fourth Amendment. In *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988), the Idaho Supreme Court held that the installation of a pen register device by the government constitutes a search under the Idaho Constitution, even though, in *Smith v. Maryland*, 442 U.S. 735 (1979), the United States Supreme Court held that it did not constitute a search under the United States Constitution. In these cases, the Idaho Supreme Court provided greater protection to Idaho citizens. However, none of the factors in these cases support a divergence from the interpretation of the Fourth Amendment by the United States Supreme Court given the facts of this case.

Finally, Rodriguez argues that the officers prolonged his detention by deviating from the initial mission of their investigation--searching for a suspicious person driving up and down the road and looking in vehicles. Rodriguez contends that Officer Henman's questions regarding his parole status and the presence of potential contraband impermissibly prolonged the duration of the stop. Because this Court affirms the district court's finding that Rodriguez was not detained and the encounter was consensual, the stop could not have been unlawfully prolonged.

## IV.
## CONCLUSION

The district court did not err in finding that Rodriguez was not unlawfully seized during his encounter with the officers. Rodriguez did not meet his burden to show that the district court erred in denying his motion to suppress. Therefore, Rodriguez's judgment of conviction for possession of a controlled substance is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.